William **JOHNSON**, Plaintiff and Appellant,

v.

John C. **HAUGLAND**, Haugland & Heustis Law Firm, and The Western State Bank of Devils Lake, North Dakota, a North Dakota corporation, Defendants and Appellees.

Civ. No. 9774.

Supreme Court of North Dakota.

March 23, 1981.

Seth R. Phillips, of Blake & Phillips, St. Paul, Minn., and John W. Frith, Associate Counsel, Devils Lake, for plaintiff and appellant William Johnson; argued by Mr. Phillips.

Richard H. McGee, of McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellees John C. Haugland and the Haugland & Heustis law firm.

Patrick J. Maddock, of Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant and appellee Western State Bank of Devils Lake.

VANDE WALLE, Justice.

William Johnson appeals from judgments entered by the district court of Ramsey County after that court granted motions for summary judgments in favor of defendants Western State Bank of Devils Lake ("Western"), John C. Haugland, and the law firm of Haugland & Heustis ("law firm"). We affirm in part and reverse in part.

The factual background of this case dates back to the late 1960s when Johnson began a business known as Bill's Mobile Homes in Devils Lake. At approximately the same time, Western started operation in that city. As is the custom in the mobile-home sales business, Johnson sold financing contracts to various banks. Western was one of those banks.

In September of 1970, Johnson sold a mobile home to Richard and Mary Ann Guzman and sold the contract to Western with recourse. In March of 1973, an officer of Western contacted Johnson and instructed him to meet the officer at the site of the Guzmans' mobile home for the purpose of repossessing the mobile home because of several payments that were past due. The repossession took place and subsequently the Guzmans instituted a lawsuit in Federal district court seeking compensatory and punitive damages and naming Western, Lyle Fering, its president, James Kuchar, its vice

president, the sheriff of Rolette County, and Johnson as defendants.

Immediately upon being served with the summons and complaint in the *Guzman* lawsuit, Johnson went to the offices of Western and spoke with Fering. Johnson apparently was confused regarding what the lawsuit was about, particularly his role in it, and sought clarification from Fering. Johnson was told by Fering that there was nothing to worry about and Fering suggested that Johnson stay until John Haugland, Western's attorney, arrived to talk about the case. Johnson told Fering that he (Johnson) had better get an attorney and was again assured by Fering that there was nothing to worry about, that what they had done was legal, and that he would take care of it. At some point during this conversation, John Kuchar, Western's vice president, joined in and gave Johnson the same general assurances that Fering had given him. Haugland arrived later and participated in the conversation. Subsequently, in a deposition, Johnson stated that following his conversations with Fering and Kuchar he "was fully under the impression that he [Haugland] was—he was representing me with the bank to take care of me." Again in his deposition, regarding his conversation at the bank with Fering, Kuchar, and Haugland, Johnson stated:

> "They said that there was nothing to do, to forget it, just to go on as if there was nothing to worry about."

Haugland represented Western, Fering, Kuchar, and Johnson in the Guzman lawsuit. The court granted a motion for summary judgment in favor of the defendants and dismissed the *Guzman* action. *Guzman v. Western State Bank of Devils Lake, N. D.*, 381 F.Supp. 1262 (D.N.D.1974). The Guzmans appealed and the Eighth Circuit Court of Appeals, after finding unconstitutional the North Dakota prejudgment attachment statute under which the defendants had proceeded, vacated the judgment and remanded the cause for further pro-

ceedings. *Guzman v. Western State Bank of Devils Lake, No. Dak.*, 516 F.2d 125 (8th Cir. 1975). After a jury awarded the Guzmans $9,356.23 general damages and $5,000 punitive damages against Johnson and $25,000 punitive damages against Western, Kuchar, and Fering, the Federal District Court granted the defendants' motion for judgment notwithstanding the verdict. The Guzmans again appealed, and the Eighth Circuit Court reversed. However, on appeal the punitive damages award against Western, Fering, and Kuchar was reduced to $10,000. *Guzman v. Western State Bank of Devils Lake*, 540 F.2d 948 (8th Cir. 1976).

On September 18, 1979, Johnson commenced the action that is the subject of this appeal. The district court granted summary judgment on motion of Haugland and the law firm. The court found that there was no genuine issue as to any material fact regarding the application of Section 28–01–18, N.D.C.C., the statute providing a two-year limitation on malpractice actions, and that the statute barred Johnson's claim as to those defendants.

Subsequently, the court heard a motion by Western to dismiss and a motion by Johnson to amend his complaint. Upon leave of the court, Johnson amended his complaint, but the court ruled that the amended complaint did not state a claim upon which relief could be granted. The court, pursuant to Rule 12(b), N.D.R.Civ.P., treated Western's motion to dismiss as one for summary judgment under Rule 56, N.D. R.Civ.P., and granted the motion.

Johnson raises two major issues on this appeal:

1. Did the district court err in its determination that the claim against Haugland and the law firm sounded in malpractice and thus was barred by the statute of limitation found at N.D.C.C. Section 28–01–18(3)? [1]

---

1. Section 28–01–18, N.D.C.C., provides for a two-year limitation on commencement of actions after the cause of action has accrued, including:

"3. An action for the recovery of damages resulting from malpractice, provided, however, that the limitation of an action against a physician or licensed hospital will not be ex-

2. Did the district court err in its determination that Johnson's amended complaint as to Western failed to set forth a claim upon which relief could be granted?

Before addressing the specific details regarding the issues raised by Johnson, we review briefly the function of the summary-judgment procedure.

■ The purpose of a summary judgment, under Rule 56, N.D.R.Civ.P., is to promote the expeditious disposition of a legal conflict on its merits, without a trial, where there exists no dispute as to material facts or where only a question of law must be determined. *Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292 (N.D.1979). A summary judgment may be based upon pleadings, depositions, admissions, affidavits, interrogatories, and the inferences that may be drawn therefrom. *Pioneer State Bank, supra.* Whatever evidence is used by the trial court in considering a motion for summary judgment, that evidence should be reviewed in the light most favorable to the party opposing the motion. *Pioneer State Bank, supra.* While, generally, a summary judgment is appropriate where there exists no genuine issue of material fact, undisputed facts do not justify the issuance of a summary judgment if reasonable conflicting inferences may be drawn from those undisputed facts. *Helbling v. Helbling*, 267 N.W.2d 559 (N.D.1978). Further, the party who moves for summary judgment carries the burden of showing clearly that there exists no genuine issue of material fact to be determined. *Winkjer v. Herr*, 277 N.W.2d 579 (N.D.1979). Finally, on appeal from summary judgment, this court's only task is to determine: Did the information available to the trial court, when viewed in a light most favorable to the opposing party, preclude the existence of a genuine issue as to any material fact and entitle the moving party to summary judgment as a matter of law? *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976). With that standard in mind, we first review the summary judgment granted to Haugland and the law firm. We shall then address the same issue in regard to Western.

## I

In his amended complaint, Johnson alleged, as to Haugland and the law firm of Haugland & Heustis:

### "3.

"Plaintiff now has knowledge and information to allege that Defendant John C. Haugland and the Law Firm of Haugland and Heustis were in a conflict of interest in representing the above defendants in that his interests were not identical nor parallel with those of Defendant Western State Bank and were in fact in conflict or contrary in some ways to the interest of the Bank. The Bank was relieved of liability and Johnson was found liable to the Guzmans.

### "4.

"Plaintiff alleges that the Defendants John C. Haugland and the Law Firm of Haugland and Heustis acted negligently in their representation of his case before the U. S. District Court named above."

■ Johnson argues that his amended complaint must be read as a whole and, because it sets forth the related conduct of Western, Haugland, and the law firm, it precludes any of them from raising a separate defense. He contends that the amended complaint sets forth causes of action that are subject to the statute of limitation found at Section 28–01–16(1), (2), (5), and (6), N.D.C.C.[2] Johnson further urges that

tended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital. . . ."

**2.** Section 28–01–16, N.D.C.C., relating to actions having six-year limitations, reads:

"The following actions must be commenced within six years after the cause of action has accrued:

"1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104.

because the amended complaint is directed toward the defendants collectively, the issue of legal malpractice and the corresponding two-year limitation statute are not germane to the questions here involved.[3] However, it is clear that paragraphs 3 and 4 of Johnson's amended complaint set forth specific allegations regarding the conduct of Haugland and the law firm in the context of the attorney/client relationship that existed between these defendants and Johnson during the course of the *Guzman* litigation. The essence of Johnson's complaint as to these defendants is that they breached their professional duty to Johnson by negligently handling his defense in the *Guzman* case and that they failed to inform him of the conflict of interest in their simultaneous representation of Johnson and Western in the *Guzman* case. This court has made it clear that a client may be entitled to damages for losses resulting from his attorney's failure to exercise the degree of care, skill, and diligence commonly exercised by reasonable and prudent lawyers and that an attorney may also be liable to his client for damage resulting from his representation of adverse interests. *Rolfstad, Winkjer, Suess, McKennett & Kaiser v. Hanson*, 221 N.W.2d 734 (N.D.1974). However, such breaches of professional duty as here alleged fall within the concept of legal mal-

practice. "Malpractice," as defined in Webster's Third New International Dictionary (Unabridged 1971), is "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result that injury, loss, or damage to the recipient of those services or to those entitled to rely upon them." We believe that the term "malpractice" in Section 28–01–18(3), N.D.C.C., refers to the nature of the subject matter of the action and not to the form of remedial procedure, whether it be in tort or contract. Further, in deciding which statute of limitation is appropriate in a given case, we believe that the determination rests upon the actual nature of the action. *Clark v. Figge*, 181 N.W.2d 211 (Iowa 1970).

▮▮▮▮ Johnson argues that where there is a question of which statute of limitation applies, the longer term applies. He cites *In Interest of W. M. V.*, 268 N.W.2d 781 (N.D.1978), as support for this proposition. However, because a determination of which statute of limitation is applicable in a given case turns on the nature of the subject matter and because the nature of Johnson's claim regarding the attorneys in this

---

"2. An action upon a liability created by statute, other than a penalty or forfeiture, when not otherwise expressly provided.
"3. . . .
"4. . . .
"5. An action for criminal conversation or for any other injury to the person or rights of another not arising upon contract, when not otherwise expressly provided.
"6. An action for relief on the ground of fraud in all cases both at law and in equity, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

**3.** As an alternative, Johnson attempts to reach Haugland and the law firm through the application of the six-year limitation statute found at Section 6–08–24, N.D.C.C. A portion of this attempt is premised in the theory that Western, through its officers Fering and Kuchar, acted as an agent for the attorney and the law firm when it allegedly solicited Johnson to become the attorneys' client. However, Section 6–08–

24, N.D.C.C., is specifically applicable to claims brought by a depositor or creditor against a bank with such claim arising out of a banking transaction between the depositor or creditor and the bank.

The other portion of this attempt involves rearranging the principal/agent theory by making the attorneys the agent and Western the principal. Presumably this theory looks beyond the alleged solicitation and to the actual representation by the attorneys of both Johnson and Western. The implication here is that because the attorneys had represented Western prior to and during the *Guzman* litigation they were in a continuing principal/agent relationship with Western. However, neither version of the theory urged by Johnson brings his claims against Haugland and the law firm within the realm of the transactions for which Section 6–08–24, N.D.C.C., was intended because the specific allegations made by Johnson as to these events are clearly based upon an attorney/client relationship.

case is professional malpractice, the application of the rule of statutory construction found at Section 1–02–07, N.D.C.C.,[4] leads us to conclude that Section 28–01–18(3), N.D.C.C., controls in this matter.[5]

■ Johnson's next contention is that even if the two-year limitation of Section 28–01–18(3), N.D.C.C., controls here, his claim is not barred because his action was brought within two years after the cause of action accrued.

4. While recognizing that any alleged professional malpractice may be framed generally in either tort or contract theory, the statute of limitation regarding these general theories is not applicable when a special statute of limitation as to the malpractice exists. This conclusion is derived from application of Section 1–02–07, N.D.C.C., which reads:

> "1–02–07. *Particular controls general.*— Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail."

5. Although Johnson has not raised the specific issue on appeal, this court has independently explored the matter of a malpractice statute of limitation which does not clearly specify the professions to which it extends and its application to claims other than medical malpractice claims. This matter is addressed, to some extent, at 49 A.L.R.2d 1216.

Our research has uncovered a variety of statutes and decisions regarding this issue. Two examples will illustrate the diversity which this issue may breed: In Ohio, a State with such a general malpractice statute, at Ohio Rev.Code Ann. Section 2305.11, the first and lasting decision was made regarding the application of the term "malpractice," as used in Section 4983 Revised Statutes, the predecessor of the current Ohio Rev.Code Ann. Section 2305.11, to attorney malpractice. The court held it applied, and reasoned that a contrary holding would force a conclusion that the Legislature ". . . undertook to discriminate in favor of the medical profession against that to which doubtless a great many of its members belong. No reason is conceivable why a physician should live down liability for his blunders in one year while a lawyer should fear his luckless client's shadow for five more years." [The Ohio court

■ The rule adopted by this court regarding the time at which a cause of action accrues for the purposes of Section 28–01–18(3), N.D.C.C., was set forth in *Iverson v. Lancaster*, 158 N.W.2d 507 (N.D.1968). In *Iverson*, this court stated:

> ". . . the best rule is that the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered." 158 N.W.2d at 510.[6]

was referring to the six-year limitation in the statute governing breach of implied contracts.] 8 Ohio N.P. (n. s.) 249, 256, 19 Ohio Dec.N.P. 494, 500 (1909).

In New York, until 1962, when the Legislature repealed and replaced the Civil Practice Act and the Rules of Civil Procedure with the Civil Practice Law & Rules, the general malpractice statute at C.P.A. Section 50(1) was generally understood to reach only to actions "to recover damages for personal injuries resulting from the misconduct of physicians, surgeons, and others practicing a profession similar to those enumerated." *Federal International Banking Co. v. Touche*, 248 N.Y. 517, 518, 162 N.E. 507, 508 (1928). This rule was applied to cases involving attorneys in *Registered Country Home Builders, Inc. v. Stebbins*, 14 Misc.2d 821, 179 N.Y.S.2d 602 (1958). However, the court in *Seger v. Cornwell*, 44 Misc.2d 994, 255 N.Y.S.2d 744 (1964), reasoned that because the newly enacted C.P.L.R. contained a three-year limitation statute regarding personal-injury claims as well as a three-year limitation statute for malpractice claims, the Legislature intended that the term "malpractice" was not limited to personal-injury claims arising out of medical malpractice.

In North Dakota there is no legislative history indicating what the Legislative Assembly had in mind when it enacted the general malpractice statute of limitation in 1893. However, in 1975 an amendment to Section 28–01–18(3), N.D.C.C., shed considerable light on what a modern-day legislature contemplated regarding the reach of the term "malpractice." In that amendment, the Legislative Assembly specified the medical profession as a beneficiary of a law providing that, barring fraud, the limitation on an action may not be extended beyond six years of the act or omission constituting the alleged malpractice by nondiscovery of that act or omission. This exception for the medical profession suggests that the Legislature envisioned more than one profession in its concept of malpractice.

6. This "discovery" rule is but one of three general rules that courts have utilized in determin-

In applying the rule that a client's cause of action accrues from the time of discovery of the act, we look to the record and see that in his deposition Johnson claimed that very early in the trial of the *Guzman* matter he was aware of the alleged conflict of interest on the part of Haugland and the law firm. That trial took place during the fall of 1975, four years before Johnson brought suit against the defendants.

Where a defendant has presented pleadings and evidence conclusively demonstrating that the applicable statute of limitation has run, summary judgment is appropriate. *Grand Island School District v. Celotex*, 203 Neb. 559, 279 N.W.2d 603 (1979). We recognize that summary judgment is not always in order simply because an affirmative defense is raised and appears meritorious. For example, if a summary-judgment motion is based upon the running of the applicable statute of limitation and the defendant has proved that the prescribed period has expired, the plaintiff may be in a position to meet his burden of showing facts that serve to suspend the time period.

Wright & Miller, *Federal Practice & Procedure: Civil*, § 2734. However, in this case the record does not reflect that Johnson presented, by affidavit or otherwise, any proof tolling the statute of limitation. Johnson asserts that the reason for his delay in bringing this action is that he was unable to find an attorney in North Dakota who was willing to accept him as a client against these defendants. We agree with the court in *Harvey v. Connor*, 85 Ill.App.3d 1061, 41 Ill.Dec. 381, 407 N.E.2d 879 (1980), which concluded, regarding an identical claim:

> "Unfortunately for Harvey, her difficulty in finding a lawyer who would properly represent her is not a proper basis for extending the limitations period." 85 Ill. App.3d at 1064, 41 Ill.Dec. at 383, 407 N.E.2d at 881.

The nature of the excuse offered by Johnson for failing to file suit within a time period prescribed by the statute of limitation does not fall within the realm of reasoning generally used by courts when a

---

ing when a malpractice claim is barred by a statute of limitation. Of the remaining two choices, some courts have held that the statute begins to run at the time the alleged act of legal malpractice occurs. *Denzer v. Rouse*, 48 Wis.2d 528, 180 N.W.2d 521 (1970). Other courts have concluded that the cause of action for malpractice against an attorney accrues, for the purpose of the running of the statute of limitation, from the time the client has sustained injury. *Shideler v. Dwyer*, 386 N.E.2d 1211 (Ind.App.1979).

Regarding the claims Johnson asserts against Haugland and the law firm in this case, application of any one of the three rules cited above, or combining any two of them, or even all three, would serve to bar his claim through the statute of limitation here involved. Application of the "time of the act or omission" rule would bar Johnson's claim because the conflict of interest alleged by Johnson in paragraph 3 of the amended complaint arose, although it is not clear from the record, sometime prior to September 1974, when Johnson and Western were granted summary judgment by the Federal District Court in the *Guzman* action. Johnson did not bring his action until September of 1979, at least five years after that alleged act of malpractice and clearly outside the two-year limitation statute. Section 28–01–18(3), N.D.C.C. The conduct complained of in paragraph 4 of Johnson's amended complaint had to have tak-

en place during the trial on remand in the *Guzman* case. The verdict against Johnson came on December 23, 1975; therefore, the alleged negligent representation of Johnson occurred at least three years and nine months before Johnson filed this action against Haugland and the law firm and clearly beyond the two-year limitation statute.

In applying the "time of injury" rule, we believe that the earliest date would be December 23, 1975, the date the jury verdict was returned against Johnson. Even if we were to use September 23, 1976, the date the judgment on mandate from the Circuit Court of Appeals was filed, it is plain to see that the point at which Johnson sustained injury was well over two years prior to commencement of his action against Haugland and the law firm.

Johnson argues that he did not sustain injury from the actions of Haugland and the law firm until December 16, 1977, when he was denied bankruptcy with respect to the *Guzman* judgment, and in June of 1979, when his doctors informed him that he required heart surgery to repair damage he alleges was caused by stress and anxiety related to the *Guzman* case. However, the judgment of record against Johnson was filed on September 23, 1976, which was clearly the point at which Johnson came under a detriment from any alleged misconduct on the part of Haugland and the law firm.

plaintiff raises inability to bring suit as a reason for tolling the statute of limitation. See, generally, 51 Am.Jur.2d, *Limitation of Actions*, § 140.

In light of the above reasoning, we conclude that Section 28–01–18(3), N.D.C.C., is the applicable statute of limitation as to these defendants and was properly applied by the court below in granting summary judgment for Haugland and the law firm.

## II

The district court, in its order on Western's motion for summary judgment, stated that Johnson's amended complaint as to Western did not state a claim upon which relief could be granted. The district court arrived at this conclusion after it had considered the pleadings, Johnson's deposition, an affidavit of Johnson, briefs by both Western and Johnson, affidavits of Messrs. Haugland and Heustis which had been incorporated into the briefs by Western, the motion itself and Johnson's response to it, and after hearing oral argument on the matter.

No memorandum opinion was issued by the district court when it granted Western's motion for summary judgment; therefore, it is not clear on what ground the court rested its decision. Western advances two arguments supporting the action of the court below.

■ Western's first contention is that Johnson's amended complaint is framed in a manner that positions Western, through its officers, as an agent of Haugland and the law firm in Western's alleged solicitation of Johnson as a client for the lawyers. On this theory, Western concludes it is entitled to ride on the coattails of the lawyers behind the protection of the statute limiting to two years the time for commencement of suits for malpractice, Section 28–01–18(3), N.D. C.C. However, we have already concluded that the determination of which statute of limitation is applicable in a given case revolves around the nature of the subject matter of the claim. While we discuss below the nature of Johnson's claim against Western, we conclude now that the nature

of the claim is not malpractice and therefore is not subject to the two-year limitation at Section 28–01–18(3), N.D.C.C.

■ In North Dakota a complaint generally needs to contain only a short and plain statement of the plaintiff's claim. Rule 8(a), N.D.R.Civ.P. We believe that modern pleading rules were intended to address this issue: Does the pleader have a cause of action rather than did he skillfully plead one? A complaint is adequate if the allegations entitle the pleader to relief under any possible theory. *United Plainsmen v. N. D. State Water Cons.*, 247 N.W.2d 457 (N.D.1976). The real question regarding the charges leveled by Johnson against Western is not what the nature of those charges is, but rather: Has he pleaded a claim for relief and in objecting to the motion for summary judgment has he raised issues of material fact so as to overcome the motion?

■ Western originally submitted a motion under defense No. 5 of Rule 12(b), N.D.R.Civ.P., to dismiss Johnson's complaint for failure to state a claim upon which relief could be granted. This type of motion was originally equated by many courts with the common-law demurrer and was considered to be solely a test as to form and sufficiency of the pleading without reliance on extraneous matters. However, the last sentence of Rule 12(b), N.D.R. Civ.P., provides that a motion under defense No. 5 of Rule 12(b) is to be converted into a motion for summary judgment whenever matters outside the pleadings are presented to and accepted by the court. This is the procedure that was followed in the present case regarding Western's motion. The extra-pleading matters submitted to and received by the court below included the plaintiff's deposition and affidavits of Johnson and Attorneys Haugland and Heustis, as well as the briefs of both sides. There is no question that Johnson's deposition and the affidavits and sworn statements possess certain characteristics that made them desirable for clearing up any haze which might have surrounded

Johnson's pleadings and at the same time were capable of being used to determine the existence of an issue of material fact so as to bar summary judgment. The effect of the conversion from a motion under defense No. 5 of Rule 12(b) to a motion for summary judgment under Rule 56 is that the focus is shifted from a limited determination of the sufficiency of pleadings to an overall look at the merits as reflected by all the material before the court. Moving with this shift is the axiom that where a motion under defense No. 5 of Rule 12(b) is involved, the movant admits as true the allegations in the complaint. See *Johnson & Maxwell, Ltd. v. Lind*, 288 N.W.2d 763 (N.D.1980). This rule becomes important when the trial court takes into consideration the extra-pleading matters in determining the existence or nonexistence of a material issue of fact.

Throughout his allegations regarding Western, Johnson makes reference to certain verbal contracts he claims were breached by Western leading to the damage he contends he sustained.[7] Thus Johnson alleges that Western advised him to repossess the trailer; that it had "checked out the law" and that that was the proper legal action to take; that Western was in error in its advice; and that, after the action against Johnson and Western was instituted by Guzman, Western had advised Johnson that it would take care of the lawsuit and that he, Johnson, had "nothing to worry about." Johnson alleges that in reliance upon Western's promises that he would not be held responsible for any liability in the matter he consented to have Haugland represent both him and Western and that the right he gave up was the right to separate representation.

Western argues that there is no way by which the allegations made by Johnson reflect that any contract was in existence. We believe the essence of Johnson's complaint, read in the light of the rules regarding pleading we have discussed above, states a cause of action against Western in indemnity. Section 22–02–01, N.D.C.C., defines "indemnity" as "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person."

---

7. The pertinent portions of Johnson's amended complaint regarding Western read:

"5.

"Defendant, the Western State Bank of North Dakota, a North Dakota corporation, hereinafter called Bank, did solicit Plaintiff, William Johnson, hereinafter called Johnson, to use its attorney, John C. Haugland and the Law Firm of Haugland & Heustis to defend Johnson in the litigations of it claims which solicitation is contrary to law.

"... At the time that the Bank advised Johnson to repossess said trailer, the Bank represented to Johnson that they had checked out the law and that that was the proper legal action to take. That established an oral contract between the Bank and Johnson. At the time that the repossession was completed, all the acts relating to that contract were completed by Johnson; however, the Bank was in error as to their advice to Johnson, whose acts could be attributed to the Bank.

"At the time that the action was commenced in *Guzman vs. the Bank*, Johnson and the Sheriff, the Bank advised Johnson that they would take care of the lawsuit and that he, Johnson, had nothing to worry about. Thus another contractural relationship was established between the Bank and Johnson which was breached by the Bank by its failure to take care of Johnson in the case and to allow him to be burdened with the judgment.

"In reliance to the Bank's promises and the contracts with the Bank, Johnson, being persuaded by the Bank and Haugland that he would not be held responsible for any liability in the matter, did consent to having Mr. Haugland represent both he and the Bank at the trial on the merits. The right that he gave up was the right to private representation. That was the consideration for the promise on his part.

"6.

"Plaintiff William Johnson, being persuaded by Defendant Bank to have Defendants John C. Haugland and the Law Firm of Haugland & Heustis represent him, and after consultation between himself and all defendants, did agree to have John C. Haugland and the Law Firm of Haugland & Heustis represent him in the litigation of the Guzmans' claim in Court. It was clearly to the Bank's best interest to have Johnson represented by the Bank's attorneys with whom they had a long standing relationship and who had advised them as to the trailer transaction in the main case since the allegiance was firmly established."

The rules to be applied in the interpretation of a contract of indemnity are set forth in Section 22–02–07, N.D.C.C. Subsection 1 of that section provides that upon an indemnity against liability the person indemnified is entitled to recover upon becoming liable. Although Western denies the existence of such a contract, a contract of indemnity need not be express but indemnity may be recovered if the evidence establishes an implied contract. In addition, a right to indemnity exists if one party is exposed to liability by the action of another party who, in law or in equity, should make good the loss of the other. 41 Am.Jur.2d *Indemnity*, § 19, p. 705.

In *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976), this court held that where there is no explicit contractual duty to indemnify another, an independent duty to indemnify will not be inferred unless the party seeking indemnity clearly shows a well-settled duty running from the other party to him. The court affirmed the district court's order of summary judgment.

In this instance, however, Johnson has alleged an express as well as an implied contract of indemnity. On this appeal we do not determine the merits of those allegations. It will be Johnson's responsibility to sustain those allegations at trial. The affidavits considered by the trial court contain conflicting statements as to what transpired at the time the trailer was repossessed as well as at the time Guzman instituted his action against Johnson and Western and Johnson's subsequent meeting with Western officials and the attorneys. Those conflicts raise genuine issues of material fact, and summary judgment is an improper method of disposing of those issues. We conclude that Johnson's complaint adequately sets forth a claim for relief against Western based upon an alleged contract of indemnity.[8] An action for breach of that alleged contract is governed by subdivision 1 of the six-year statute of limitation, Section 28–01–16, N.D.C.C. See fn. 2.

**8.** Other theories of recovery, such as fraud, which may be advanced as a result of the trial of issues by express or implied consent of the

The district court's summary judgment in favor of John C. Haugland and the law firm of Haugland & Heustis is affirmed. The district court's summary judgment in favor of Western State Bank is reversed and the case is remanded for a trial on the merits.

PEDERSON, Acting C. J., PAULSON and SAND, J., and BURDICK, Supreme Court Commissioner, concur.

BURDICK, Supreme Court Commissioner, sitting in stead of ERICKSTAD, C. J., disqualified.

parties under Rule 15(b), N.D.R.Civ.P., are not before us.