**GEOSTAR CORPORATION,**
Plaintiff and Appellee,

v.

**PARKWAY PETROLEUM,**
INC., Defendant,

and

Coda Energy, Inc., Defendant
and Appellant.

**GEOSTAR CORPORATION,**
Plaintiff and Appellee,

v.

**PARKWAY PETROLEUM, INC.,**
Defendant and Appellant,

and

Coda Energy, Inc., Defendant.

Civ. Nos. 920093, 920129.

Supreme Court of North Dakota.

Jan. 22, 1993.

Dwight C. Eiken (argued), of Bjella, Neff, Rathert, Wahl & Eiken, PC, Williston, for plaintiff and appellee.

Gary R. Wolberg (argued), of Fleck, Mather & Strutz, Bismarck, for defendant and appellant Parkway Petroleum, Inc.

Brent J. Edison (argued), of Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendant and appellant Coda Energy, Inc.

RALPH J. ERICKSTAD, Surrogate Judge.[1]

Parkway Petroleum, Inc. and Coda Energy, Inc., appealed from a district court judgment determining that they were not entitled to recover on their cross-claims against each other; that they were jointly and severally liable to GeoStar Corporation for a cash finder's fee for GeoStar's efforts in finding abandoned or marginally profitable oil and gas wells; and that GeoStar was entitled to specific performance for the conveyance of an overriding royalty interest in those wells. We affirm in part, reverse in part, and remand.

In October 1989, GeoStar and Parkway executed a written agreement in which GeoStar agreed to find abandoned or marginally profitable oil and gas wells in the North Williston Basin for purchase by Parkway. Parkway agreed to pay GeoStar a cash finder's fee and to assign GeoStar an overriding royalty interest for each well which Parkway purchased as a result of GeoStar's efforts. GeoStar provided Parkway with information about thirty-three wells owned by Total Minatome Corporation. Because of the size of the proposed purchase from Total, Parkway asked GeoStar to reduce the cash finder's fee and the overriding royalty interest. By written agreement dated October 25, 1989, GeoStar and Parkway agreed that if Parkway was the successful bidder for the thirty-three wells, GeoStar would reduce the cash finder's fee to $1,000 per well and the overriding royalty interest to .5% of 8/8ths of the production attributable to each well acquired by Parkway.

Parkway and Total entered into an agreement, dated November 13, 1989, in which Parkway agreed to purchase Total's interest in the thirty-three wells for $910,-

1. Surrogate Judge Ralph J. Erickstad was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

000. Parkway borrowed $91,000 from Domestic Petroleum Investments, Inc., for the downpayment to Total. However, Parkway was unable to independently finance the remainder of the purchase price and ultimately agreed to assign ninety percent of its interest in the wells to Coda, subject to Parkway's option to reacquire that interest and conduct horizontal drilling if the wells became uneconomical for Coda to operate. Coda was notified of Parkway's October 25, 1989 agreement with GeoStar, and Coda informed Parkway that the assignment was unacceptable unless that agreement was modified to take effect when Parkway exercised its option.

On January 15, 1990, Parkway's president, Ray Holifield, telephoned Dean Kinnischtzke of GeoStar to request a modification of the October 25, 1989 agreement. Kinnischtzke testified that his understanding of the telephone conversation was that Parkway wanted the October 25, 1989 agreement restructured so that GeoStar waived its right to the overriding royalty interest in exchange for an additional cash payment of about $70,000. Parkway prepared a written modification to defer payment of the cash finder's fee and assignment of the overriding royalty interest until Parkway exercised its option. However, Kinnischtzke faxed Parkway a rejection of the proposed written modification:

> "I find the terms and conditions of this agreement unacceptable and contrary to the intent portrayed on a previous phone conversation. To be acceptable to a revision of the original agreement, our company must obtain monetary consideration equal to the value of the overriding interest."

On January 24, 1990, two representatives from Parkway, John McGuire and Terri Anderson, telephoned Kinnischtzke and asked him to execute a similar written modification of the October 25, 1989 agreement and to fax a confirmation to them. However, Kinnischtzke did not fax a confirmation to Parkway.

Nevertheless, by letter to Coda dated January 17, 1990, Parkway represented that the October 25, 1989 agreement had been modified. On January 31, 1990, Total conveyed its interest in the wells to Parkway and Parkway assigned ninety percent of that interest to Coda,[2] subject to Parkway's option to reacquire that interest and conduct horizontal drilling if the wells became uneconomical for Coda to operate.

GeoStar sued Parkway and Coda for the cash finder's fee and for specific performance of the overriding royalty interest for the thirty wells located in North Dakota. Parkway alleged that its October 25, 1989 agreement with GeoStar had been orally modified, or, alternatively, that the cash finder's fee was not due because Parkway had not acquired a present interest in the wells. Coda alleged that it had relied upon Parkway's representations that the October 25, 1989 agreement had been modified and that specific performance of the overriding royalty interest was not warranted because damages against Parkway were adequate. Coda and Parkway also cross-claimed for contribution or indemnity from each other for any potential liability to GeoStar.

Prior to trial, GeoStar submitted ex parte proposed findings of fact to the court. After trial, GeoStar submitted ex parte revised findings of fact to the court, and the court essentially adopted those findings. The court found that there was no binding or enforceable modification of the October 25, 1989 agreement; that Parkway and Coda were jointly and severally liable to GeoStar for $12,623.94 for the cash finder's fee; that GeoStar was entitled to specific performance of the overriding royalty interest; and that neither Coda nor Parkway were entitled to recover against each other on their cross-claims. Coda and Parkway both objected to GeoStar's ex parte communications with the trial court, and pursuant to Rule 52, N.D.R.Civ.P., they asked the court either to amend the findings, or to make additional findings. After a hearing,

---

**2.** Parkway also assigned ten percent of its interest to Domestic Petroleum Investments, Inc., as repayment for the loan for the $91,000 down-payment made by Parkway to Total in November 1989. Domestic is not a party to this action.

the court denied their motions, and Parkway and Coda separately appealed.

Parkway and Coda both seek a new trial or reversal of the judgment, because of GeoStar's ex parte communications with the trial court.

In *Disciplinary Action Against Wilson,* 461 N.W.2d 105 (N.D.1990), we recently considered ex parte communications between counsel and the court in the context of a disciplinary proceeding against a judge. In that case, we concluded that an ex parte communication between counsel and the judge and the judge's ex parte issuance of an order clarifying the judgment and an addendum to the judgment were appropriate to correct a clerical mistake under Rule 60(a), N.D.R.Civ.P. We therefore held that the record did not clearly and convincingly demonstrate a willful violation of Rule 3(A)(4), N.D.R.J.C.,[3] and we dismissed the formal disciplinary proceeding against the judge. However, we observed that if the proceeding had been a direct appeal from the amended judgment, a remand for notice and a hearing may have been appropriate.

■ Our rules of professional and judicial conduct explicitly prohibit ex parte communications. *See* fn. 3. "[E]x parte proceedings are anathema in our system of justice." *United States v. Thompson,* 827 F.2d 1254, 1258–1259 (9th Cir.1987). Ex parte communications or proceedings are prohibited because they create a potential due process infringement, raise the appearance of impropriety, and violate the adversial concept. *Guenther v. Commissioner*

*of Internal Revenue,* 939 F.2d 758 (9th Cir.1991); *Medical Arts Clinic, P.C. v. Henry,* 484 So.2d 385 (Ala.1986); *McElhanon v. Hing,* 151 Ariz. 403, 728 P.2d 273 (1986); *Love v. State,* 569 So.2d 807 (Fla. Dist.Ct.App.1990). Although ex parte communications between the court and counsel are disfavored, other courts have required some prejudice to the adverse party before ordering a new trial. *Guenther; Henry; McElhanon; Love. Cf. Kronberger v. Zins,* 463 N.W.2d 656 (N.D.1990) [ex parte communication between judge and jury was not harmless error].

■ In this case, all of the parties filed pretrial briefs, which were served upon each other. GeoStar's pretrial brief detailed its factual and legal position regarding the alleged oral modification of the October 25, 1989 agreement. Parkway and Coda were thus both apprised of GeoStar's factual and legal arguments prior to trial. After GeoStar submitted ex parte proposed findings of fact and the court adopted those findings with some additions, both Parkway and Coda moved for amended or additional findings. After a hearing, the court denied their motions and supplemented its findings.

These ex parte communications are not conducive to good practice, and although they may not have been intended to secure an advantage of one party over another, they have an appearance of impropriety. However, we believe that, in the absence of any evidence of prejudice, because of GeoStar's pretrial brief, which outlined its factual and legal position, and the court's re-

---

**3.** Rule 3(A)(4), N.D.R.J.C., provides:
"*A. Adjudicative Responsibilities.*

\* \* \* \* \* \*

"(4) A judge shall accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning the substance of a pending or impending proceeding.
"(a) A judge shall promptly inform any attorney who attempts to initiate unauthorized *ex parte* communications with the judge that the attorney may be violating Rule 3.5(a) of the Rules of Professional Conduct or shall take such action against the attorney as is appropriate.

"(b) A judge, however, may *obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond.*"
Rule 3.5, N.D.R.P.C., also provides:
"A lawyer shall not:
"(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law including ex parte communications concerning a pending or impending proceeding; ..."

consideration of its findings and decision after a hearing, a new trial is not necessitated, nor is reversal of the judgment appropriate. *See Wilson, supra. Cf. Woodbury v. Pfliiger*, 309 N.W.2d 104 (N.D. 1981) [no denial of due process where, after court rendered oral decision, counsel was permitted to present final argument and given opportunity to file delayed briefs]. However, in order to signal our disapproval of these ex parte communications, we deny GeoStar costs on appeal.

■ Parkway contends that the trial court's finding that there was no modification of the October 25, 1989 agreement was clearly erroneous. Parkway argues that the overwhelming weight of the evidence established that, during the telephone calls from its representatives to GeoStar, Kinnischtzke orally agreed to modify the October 25, 1989 agreement.

■ A legally enforceable contract, whether oral or written, requires mutual acceptance and understanding of the terms by the offeror and offeree. *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352 (N.D. 1986). The existence of an oral contract is a question of fact, which is subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *E.g., Wolf v. Schumacher*, 477 N.W.2d 827 (N.D.1991). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* If there are two permissible views of the evidence, or inferences to be drawn from the evidence, a trial court's choice between those views is not clearly erroneous. *Id.*

The parties presented conflicting evidence about the existence of an oral agreement to modify the October 25, 1989 agreement. GeoStar relies upon Kinnischtzke's testimony that there was no oral modification. Parkway relies upon the testimony of Holifield, McGuire, and Anderson to establish the existence of an oral agreement. Parkway also asserts that the "credibility of Kinnischtzke is very much in doubt."

In cases in which the credibility of a witness is at issue, we must be faithful to the admonition of Rule 52(a), N.D.R.Civ.P., that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Here, the trial court · found that "the 'feelings' of Parkway and Coda that a consent [to the modification] from GeoStar was given or would be forthcoming did NOT, in this dispute, create a binding or enforceable modification agreement." The trial court essentially determined that Kinnischtzke was credible and found that GeoStar had not agreed to an oral modification of the October 25, 1989 agreement. We are not left with a definite and firm conviction that the trial court made a mistake in weighing the conflicting evidence and determining that there was no modification of the October 25, 1989 agreement. We therefore conclude that the trial court's finding that there was no modification is not clearly erroneous.[4]

■ Parkway asserts that GeoStar's claim is barred because Coda and not Parkway purchased the wells and because of a failure of consideration. Parkway essentially argues that GeoStar did not fulfill the terms of the October 25, 1989 agreement, because Parkway was not the "successful bidder" for the wells as required by that agreement.

Parkway's arguments ignore that Total conveyed its interest in the wells to Parkway and that Parkway assigned ninety percent of that interest to Coda. Parkway retained an option to reenter the wells and conduct horizontal drilling when the wells became uneconomical for Coda to operate.

---

4. Parkway also makes several related arguments in an attempt to remove the alleged oral agreement from the statute of frauds. Parkway argues that the statute of frauds is not applicable because GeoStar prevented the oral agreement from being put into writing by fraud under Section 9–06–03, N.D.C.C.; that GeoStar is equitably estopped from asserting the statute of frauds; that the oral modification contained the essential elements of a contract; and that the oral modification was a substitute contract. Because we sustain the trial court's finding that there was no agreement to modify the contract, it is unnecessary to consider those arguments.

Parkway was a "successful bidder," and we reject Parkway's contrary arguments.

▮ Coda argues that the trial court erred in granting GeoStar specific performance of the overriding royalty interest. Coda asserts that because an overriding royalty interest is an interest in personal property, a presumption arises under Section 32–04–09, N.D.C.C., that damages were adequate for the breach of an agreement to transfer the overriding royalty interest.

In *Texaro Oil Co. v. Mosser*, 299 N.W.2d 191, 194 (N.D.1980), this court said that the "term 'royalty interest' generally refers to the landowner's share in the production of oil and gas at severance ... [and] is personal property." *Texaro* was an action to determine priorities of adverse claims to an undivided one-half interest in oil, gas, and other minerals. Ralph and Meta Mosser contended that a conveyance of a "mineral interest" to them was pursuant to a prior recorded option to purchase a "royalty interest" granted to Ralph and that the conveyance of the "mineral interest" related back to the recording of the royalty option. The Mossers thus asserted priority over interests arising after the option to purchase the royalty interest was recorded.

▮ This court said that it was a mineral interest's attribute of operating rights, i.e., the right to enter the land to explore, drill, produce and otherwise carry on mining activities, that distinguished a mineral interest from a royalty interest owner's right to share in the proceeds and concluded that because royalty and mineral interests were two different interests, the option to purchase the "royalty interest" was not exercised by the conveyance of a "mineral interest." *See Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476 (N.D.1991) [mineral and royalty interests are separate property interests with different characteristics]. Because the holding in *Texaro* hinged on the difference between a mineral interest owner's operating rights and a royalty interest owner's right to share in proceeds and not the real property versus personal property distinction, the language in *Texaro* that a "royalty interest is personal

property" was not essential to the holding and thus is dictum. *See* 58 N.D.L.Rev. 431, 440 *Some Comments on North Dakota Oil and Gas Law—Three Cases From the Eighties* (1982). That dictum conflicts with prior precedent that an unaccrued oil and gas royalty is an interest in real property. *Yttredahl v. Federal Farm Mortgage Corp.*, 104 N.W.2d 705 (N.D.1960); *Payne v. A.M. Fruh Co.*, 98 N.W.2d 27 (N.D.1959); *Aure v. Mackoff*, 93 N.W.2d 807 (N.D. 1958); *Corbett v. LaBere*, 68 N.W.2d 211 (N.D.1955). To the extent that the dictum in *Texaro* suggests that a royalty interest is personal property, we disavow that language and we reaffirm that a royalty interest is real property.

Section 32–04–09, N.D.C.C., establishes a presumption that damages are inadequate for a breach of an agreement to transfer real property. Section 32–04–16, N.D.C.C., provides that specific performance may be awarded against a subsequent purchaser, except a purchaser in good faith for value. A decision to grant or deny specific performance rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *Harrington v. Harrington*, 365 N.W.2d 552 (N.D.1985). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979).

In this case, Coda knew about Parkway's prior agreement with GeoStar to grant an overriding royalty interest. Coda took its interest in the wells with knowledge of that prior agreement, and under Section 32–04–16, N.D.C.C., Coda was not a good faith purchaser for value. Accordingly, Parkway's obligation to grant GeoStar an overriding royalty interest may be specifically enforced against Coda. Under Section 32–04–09, N.D.C.C., damages are presumed to be inadequate for the breach of an agreement to transfer real property like an overriding royalty interest. We cannot say that the trial court acted arbitrarily, unreasonably, or unconscionably in granting GeoStar specific performance. We there-

fore conclude that the trial court did not abuse its discretion.

■ Coda and Parkway also both contend that the trial court erred in dismissing their cross-claims against each other. Parkway asserts that Coda purchased the wells with knowledge of the terms of the October 25, 1989 agreement. Parkway thus argues that it was entitled to indemnity or contribution from Coda for any sum it may have to pay GeoStar. Coda argues that Parkway warranted that the October 25, 1989 agreement had been modified and contends that it was entitled to full and complete indemnification from Parkway.

■ Indemnity is a remedy which permits a party to recover reimbursement from another for the discharge of a liability which, as between the two parties, should have been discharged by the other. Section 22–02–01, N.D.C.C.; *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Casualty Co.*, 482 N.W.2d 600 (N.D.1992); *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981). A contract of indemnity may be express or implied. *Johnson v. Haugland, supra.* If there is no express contractual duty to indemnify another, a party may be entitled to indemnity if that party has incurred a liability because of the breach of a well-settled duty by the other party. *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976). Additionally, a right to indemnity exists if one party is exposed to liability by the actions of another party who, in law or equity, should make good for the loss of the other. *Johnson v. Haugland, supra.*

Coda admits that it knew about the October 25, 1989 agreement. However, in a January 17, 1990 letter of intent setting forth the terms and conditions of the agreement between Parkway and Coda, Parkway represented to Coda that the October 25, 1989 agreement had been modified:

"The overriding royalty interest shall be effective from the date of first production obtained by any horizontal drilling operations taking place on a Well. The fees involved shall be one thousand dollars ($1,000.00) per well ... [and] shall be due and payable to GEOSTAR Corpo-

ration at the time horizontal drilling operations are commenced on any of the Wells or Properties."

The assignment of contract between Parkway and Coda, dated January 19, 1990, provided:

"The parties have agreed to pay the following finder's fees incurred by Parkway, in the Sharing Ratio, if and when Closing occurs:

"(i) to GeoStar, an overriding royalty interest of 0.5% of production, proportionately reduced to the working interest acquired from Total, effective only for production from any currently existing well-bore which is obtained by a horizontal drilling reworking of such well-bore; ..."

The trial court found that the failure of both Parkway and Coda to verify a modification from GeoStar was attributable to their own actions and denied their cross-claims against each other. Although Coda's actions may not have been prudent, the trial court's decision ignored the written warranties made by Parkway to Coda. Coda was exposed to liability because Parkway breached its assurances to Coda. We believe that, as between these two parties, Coda was entitled to rely upon Parkway's warranties and to recover reimbursement from Parkway for a breach of those warranties. Under these circumstances, we believe the trial court erred in not allowing Coda indemnification based upon Parkway's representations that the October 25, 1989 agreement had been modified. We also believe that those warranties preclude Parkway from recovery on its cross-claim against Coda. Accordingly, we hold that the trial court erred in dismissing Coda's cross-claim against Parkway, and we remand to the trial court for a determination of Parkway's liability to Coda.

Because of the ex parte communications involved in this case, we deny GeoStar costs on appeal. We also allow Coda costs against Parkway on appeal. For reasons stated in this opinion, we affirm in part,

reverse in part, and we remand for proceedings consistent with this opinion.

VANDE WALLE, C.J., and MESCHKE and LEVINE, JJ., concur.

Justice J. PHILIP JOHNSON was a member of the Court when this case was heard but left the Court on December 31, 1992, and did not participate in this decision.

Justices NEUMANN and SANDSTROM were not members of the Court at the time this case was heard and did not participate in this decision.