Wayne JILEK and Diane Jilek,
Plaintiffs and Appellants,

v.

BERGER ELECTRIC, INC., a North Dakota corporation, Defendant
and Appellee.

Civ. No. 880375.

Supreme Court of North Dakota.

June 6, 1989.

Freed, Dynes, Reichert & Buresh, PC, Dickinson, for plaintiffs and appellants; argued by George T. Dynes.

Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendant and appellee; argued by Paul F. Ebeltoft, Jr.

LEVINE, Justice.

Wayne Jilek and Diane Jilek appeal from a summary judgment in favor of Berger Electric, Inc. Because we hold that NDCC § 28–01–18(3) (two-year statute of limitations) does not apply to electricians, we reverse and remand.

The Jileks commenced suit against Berger Electric on June 27, 1986, alleging that the electrical heating system which Berger Electric planned, constructed and installed in the Jeliks' home in 1980 caused substan-

tial property damage. The Jileks alleged that they relied on the expertise and experience of Berger Electric and that by failing to plan and install a suitable system, Berger Electric violated the contract and breached the implied warranty of fitness for the purpose intended. The Jileks also sought damages for mental anguish.

Berger Electric moved for summary judgment asserting that the law does not recognize a claim for negligent breach of contract, that the contract claim was barred by the four-year statute of limitations [NDCC § 41–02–104 (UCC 2–725)] and that there was no basis for the claim for mental anguish.

After a hearing, the trial court granted partial summary judgment on the Jileks' claim for mental anguish. The trial court denied the motion for summary judgment on the contract and negligence claims, finding that there were material facts in dispute.

Berger Electric again moved for summary judgment alleging that the Jileks' claim was in essence a professional malpractice claim, and was barred by the two-year malpractice statute of limitations, NDCC § 28–01–18(3).

The trial court granted summary judgment to Berger Electric. The trial court found that the employee of Berger Electric who was responsible for the installation of the heating system was a master electrician. The trial court reasoned that the Jileks' claim was primarily grounded on malpractice and because the malpractice statute applied to electricians, the claim was barred by the two-year malpractice statute of limitations. The Jileks appealed.

The Jileks contend that their claim is not barred by the malpractice statute of limitations because the statute is inapplicable to electricians. We agree.

■ The interpretation of a statute is a question of law fully reviewable by this court. *Aanenson v. Bastien*, 438 N.W.2d 151, 153 (N.D.1989).

The malpractice statute of limitations, NDCC § 28–01–18(3), provides that an "action for the recovery of damages resulting from malpractice" must be commenced within two years.[1]

■ Although the Legislature has not defined malpractice, this court has. In *Johnson v. Haugland*, 303 N.W.2d 533, 538 (N.D.1981), we defined malpractice as:

"... the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result that injury, loss, or damage to the recipient of those services or to those entitled to rely upon them." [citing Webster's Third New International Dictionary (Unabridged 1971)].

*See Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng. P.C.*, 419 N.W.2d 920, 922 (N.D.1988). Thus, malpractice is a professional's failure to exercise the requisite degree of skill and learning in providing services. *Johnson, supra.* Simply stated, malpractice means professional negligence. In a malpractice case, the malpractice statute of limitations controls over statutes of limitations applicable to contract or other tort actions. *Id.* at 539.

While the statute itself does not spell out the professions which it covers, the legislative history of NDCC § 28–01–18(3) suggests that the "Legislature envisioned more than one profession in its concept of malpractice." *Johnson, supra* at 539 n. 5. To date we have held that the statute applies to the professions of medicine and law. *Id.;* e.g., *Anderson v. Shook*, 333 N.W.2d 708 (N.D.1983).

1. NDCC § 28–01–18(3) provides:

   "The following actions must be commenced within two years after the claim for relief has accrued:

   "3. An action for the recovery of damages resulting from malpractice; provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital. This limitation is subject to the provisions of section 28–01–25."

Because NDCC § 28–01–18(3) applies to actions for malpractice and because "malpractice" means ·professional negligence, whether the statute bars the action against Berger Electric depends upon whether the occupation of electrician is a profession.[2]

Courts use varying approaches to resolve whether an occupation is a profession for purposes of a malpractice statute of limitations. There are three distinct lines of cases. The first approach is to limit malpractice statutes of limitations to only those professions recognized at common law. *See Dennis v. Robbins Funeral Home*, 411 N.W.2d 156 (Mich.1987); *Hocking Conservancy District v. Dodson–Lindblom Assoc., Inc.*, 62 Ohio St.2d 195, 404 N.E.2d 164 (1980). The common law recognized the professions of medicine, *Dennis, supra*, law, *Id.*, and theology, *United States v. Laws*, 163 U.S. 258, 266, 16 S.Ct. 998, 1001, 41 L.Ed. 151 (1895). In North Dakota there is no common law where the law is declared by statute. NDCC § 1–01–06. Arguably, because our statute does not declare which professions are encompassed within its scope, the common law may be applied. However, even if the common law may be relied upon to decide which occupations are professions, we believe that there may be occupations in addition to those at common law that fall within the ordinary meaning of "profession." For example, in *Heimer v. Privratsky*, 434 N.W.2d 357 (N.D.1989), we found that an optometrist is a professional subject to a professional negligence action, i.e., malpractice.

■ Further, in concluding that the malpractice statute of limitations applied to lawyers as well as physicians, we did not rely upon the common law, but looked to a dictionary definition of "malpractice."

*Johnson, supra.* We therefore decline to limit the applicability of our malpractice statute of limitations to only those professions recognized at common law. The common law provides a reasonable reference or starting point for our inquiry, but does not resolve it.

■ A second approach is to apply the malpractice statute of limitations to all licensed occupations. *E.g., Owyhee County v. Rife*, 100 Idaho 91, 593 P.2d 995 (1979). We believe that this application is much too broad and contradicts the ordinary meaning of "profession". Such a criterion would encompass all of the vocations listed in NDCC ch. 43, including such occupations as cosmetologists (43–11), embalmers (43–10), and plumbers (43–18). We do not believe that the Legislature intended, by use of the term "malpractice," for the malpractice statute of limitations to apply to every licensed occupation.

The third approach, and one that we favor, is reliance on a dictionary definition of "profession" to encompass specialized knowledge and intensive preparation in skills as well as the scholarly principles underlying such skills.[3] *E.g., Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987); *Cristich v. Allen Engineering, Inc.*, 458 So.2d 76 (Fla.Dist.Ct.App.1984). Just as we did in *Johnson* when we were called upon to define "malpractice," we again look to the dictionary for enlightenment on the meaning of "profession."

Webster's New World Dictionary (Second College Edition 1980) defines "profession" as "a vocation or occupation requiring advanced education and training, and involving intellectual skills such as medicine, law, theology, engineering, teaching, etc." Black's Law Dictionary (5th ed. 1981) sim-

---

**2.** There are three classes of electricians who may be licensed in North Dakota, master electrician, journeyman electrician, and class B electrician. NDCC § 43–09–10. A master electrician is defined as "a person having the necessary qualifications, training, experience and technical knowledge to plan, lay out, and supervise the installation and repair of electrical wiring apparatus and equipment for electrical light, heat and power ..." NDCC § 43–09–01. For

purposes of this opinion, our use of the term electrician includes all grades of electricians.

**3.** One eminent legal authority, Dean Roscoe Pound of Harvard Law School, described a profession as a group "pursuing a learned art as a common calling in the spirit of public service, its work no less a public service because it is also a means of earning a livelihood." R. Pound, The Lawyer From Antiquity to Modern Times (1953).

ilarly defines "profession" and explains that "[t]he labor and skill involved in a profession is predominantly mental or intellectual, rather than physical or manual." These definitions, at least implicitly, distinguish a profession from a trade. Webster's New World Dictionary, *supra*, defines "trade" as "skilled work, as distinguished from unskilled work or from a profession or business." Black's Law Dictionary also distinguishes a "trade" from the "learned professions."

The Florida supreme court has refined the dictionary definition of "profession" by providing a more specific meaning. In *Pierce v. AALL Ins., Inc.*, 531 So.2d 84, 87 (Fla.1988), the court defined "profession" as a "vocation requiring, as a minimum standard, a college degree in the specific field." One of the hallmarks of a profession is the advanced education that is required to achieve membership in that profession. For that reason, we believe the Florida supreme court has captured the essence of the meaning of "profession" by defining it as a vocation requiring a minimum of a college degree in the specific field. *Pierce, supra.* We agree with the Florida decision insofar as it may be read to hold that a college degree is ordinarily the intrinsic characteristic of a profession. While there may be professions or individual members of a profession that cannot be so neatly pigeonholed, we hold that, as a general rule, a profession is an occupation that requires a college degree in the specific field. Applying that principle to this case, we conclude that an electrician may be trained in a technical area and may perform skilled work, but he or she is not engaged in an occupation that requires a college degree in the specific field. In short, an electrician practices a trade, not a profession.

In concluding that the malpractice statute of limitations applied to electricians, the trial court relied heavily on the Restatement (Second) of Torts § 299A. That section describes the standard of care for one who undertakes to render services in the practice of a profession or trade as "the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities."

The trial court concluded that because the standard of care for an electrician is identical to the standard of care required for physicians and attorneys, the same malpractice statute of limitations should apply. Berger Electric argues that it would be incongruous to hold an electrician to a higher standard of care while denying professional status and the protection of the malpractice statute of limitations.

Section 299A establishes the skill or knowledge that one is required to exercise in the practice of a profession or trade. It does not, however, equate a profession with a trade. To the contrary, in referring to both profession and trade, it preserves the distinction between a profession and a trade. Comment b enlarges upon that distinction by noting that the section applies to a person in the practice of a profession "such as that of physician or surgeon, dentist, pharmacist, oculist, attorney, accountant or engineer" and a person in the practice of a skilled trade "such as that of airline pilot, precision machinist, electrician, carpenter, blacksmith, or plumber."

There is nothing unfair about requiring, on the one hand, a standard of care for a tradesperson that is based on the conduct of reasonable persons who perform that trade, while on the other hand, restricting the malpractice statute of limitations to persons engaged in professions. The six-year statute of limitations for nonprofessional negligence, NDCC § 28–01–16, applies to all tradespersons alike.

We conclude that the malpractice statute of limitations applies to one practicing a profession, not a trade. Because an electrician practices a trade, the two-year malpractice statute of limitations does not apply.

Accordingly, we reverse and remand for further proceedings.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.