**BOTTINEAU FARMERS ELEVATOR,**
**Appellee,**

v.

**WOODWARD–CLYDE CONSULTANTS,**
**a foreign corporation, Appellant.**

**No. 90–5151.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1990.

Decided May 5, 1992.

Rehearing and Rehearing En Banc
Denied July 16, 1992.

Mart Daniel Vogel, Fargo, N.D., argued (Kermit Edward Bye, on the brief), for appellant.

Howard D. Swanson, Grand Forks, N.D., argued (Richard A. Clapp, on the brief), for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and ARNOLD,* District Judge.

McMILLIAN, Circuit Judge.

Woodward–Clyde Consultants (WCC), a Nevada corporation licensed to do business in North Dakota, appeals from a final judgment entered in the District Court for the District of North Dakota, upon a jury verdict, in the amount of $277,626.70 in favor of Bottineau Farmers Elevator (BFE), a North Dakota agricultural cooperative. For reversal, WCC argues the district court erred in (1) holding BFE's cause of action was not barred by the applicable statute of limitations, (2) giving erroneous jury instructions and submitting a special verdict form, and (3) failing to reduce the damages award by 27% for damage caused by a wind storm and by 61% for damage caused by the negligence of others. For the reasons discussed below, we hold the applicable tolling statute is unconstitutional and accordingly reverse the judgment of the district court.

The parties stipulated to the following facts. In August 1981 BFE hired WCC to conduct a subsurface investigation and prepare a soil evaluation report to be used in connection with the design and construction of a concrete silo elevator addition to its grain elevator facility located in Bottineau, North Dakota. WCC performed the soil evaluation and submitted a written report to BFE. BFE thereafter hired Jacobson & Sons Construction Co. (Jacobson) to build the silo elevator addition. Construction began in the fall of 1981 and was completed during the late summer of 1982. In late July 1982 BFE employees began filling the silo elevator addition with grain. BFE employees subsequently noticed the silo elevator addition was tilting or leaning off center about six to eight inches. BFE general manager Dale Haberman discussed the tilting problem with the Jacobson employee who had designed the silo elevator addition. In September 1982 Jacobson consulted Solidification, Inc., a grouting contractor. Leonard Lindelof, the principal officer of Solidification, Inc., inspected the silo elevator addition, reviewed the WCC report and conducted an investigation. In October 1983 Lindelof advised Haberman and BFE's board of directors that the tilting of the silo elevator addition had been caused by "bad soil" but could be corrected, and that WCC should have warned BFE about that possibility in its report.

In the meantime, the silo elevator addition continued to lean off center. In April 1984 there was a severe wind storm, and the silo elevator addition tilted an additional eleven and one-half inches. The silo elevator addition eventually tilted a total of forty-one inches off center. In 1984 and 1985 Solidification, Inc., jacked the silo elevator addition upright. BFE later hired

* The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation.

independent consultants John Mercer and Kenneth Lafond to stabilize the foundation of the silo elevator addition and to investigate the cause of the initial tilting. In September 1985 the independent consultants concluded, as had Lindelof, that WCC's testing procedures had failed to discover a weak layer of clay at the site and that, but for this undiscovered weak layer of clay, the silo elevator addition would not have tilted more than the minimal degree predicted by WCC.

In April 1986 BFE filed this lawsuit in state court against WCC and BFE's insurer, Millers National Insurance Co. (Millers). (Jacobson, the contractor, had gone out of business.) BFE alleged WCC had negligently conducted the soils investigation and asserted claims of negligence and breach of contract. BFE sought declaratory relief against Millers to determine the extent of insurance coverage for the damage caused by the April 1984 wind storm. WCC removed the case to federal district court on the ground of diversity jurisdiction. WCC denied any negligence and alleged that the tilting had been caused either by the contractor's improper design or construction or by WCC's failure to follow its instructions in connection with the critical initial loading of the silo elevator addition. BFE

later settled its insurance claim against Millers.

Shortly before trial, with leave of court, WCC amended its answer to assert several affirmative defenses, including statute of limitations defenses. WCC contended that the applicable statute of limitations was the two-year statute of limitations for malpractice claims, N.D.Cent.Code § 28–01–18(3).[1] WCC argued that, under the discovery rule of accrual, BFE's claim accrued in October 1983 when Solidification, Inc., advised BFE that the cause of the tilting was poor soil and that WCC had not tested the site properly. WCC argued that because BFE did not file its lawsuit until April 1986, more than two and one-half years later, the lawsuit was thus time-barred. BFE argued, however, that soil classification was not a "profession" for purposes of the malpractice statute of limitations and the applicable statute of limitations was the ten-year statute of repose applicable to claims involving improvements to real property, N.D.Cent.Code § 28–01–44.[2] In the alternative, BFE argued that even if the two-year malpractice statute of limitations applied, the running of any statutory period had been suspended, or tolled, by N.D.Cent.Code § 28–01–32[3] because WCC was a foreign corporation, and thus out of

---

**1.** N.D.Cent.Code § 28–01–18(3) provides in part that "[a]n action for the recovery of damages resulting from malpractice" must be commenced within two years after the claim for relief has accrued.

**2.** N.D.Cent.Code § 28–01–44(1) provides in part:

No action, whether in contract, oral or written, in tort or otherwise, to recover damages:
   a. For any deficiency in the design, planning, supervision, or observation of construction or construction of an improvement to real property;
   b. For injury to property, real or personal, arising out of any such deficiency; ...
   ....
may be brought against any person performing or furnishing the design, planning, supervision, or observation of construction, or construction of such an improvement more than ten years after substantial completion of such an improvement.

**3.** Before 1989, N.D.Cent.Code § 28–01–32 (repl.1974) (superseded 1989) provided in part:

If any person shall be out of this state at the time a cause of action accrues against him [or her], an action on such cause of action may be commenced in this state at any time within the term limited in this chapter for the bringing of an action on such cause of action after the return of such person into this state. If any person shall depart from and reside out of this state and remain continuously absent therefrom for the space of one year or more after a cause of action shall have accrued against him [or her], the time of his [or her] absence shall not be taken as any part of the time limited for the commencement of an action on such cause of action.

The 1989 amendment became effective on July 10, 1989. The amendment changed some of the terms, for example, "cause of action" was changed to "claim for relief," and, more important for purposes of this appeal, added the following exception: "The provisions of this section ... do not apply if this state's courts have jurisdiction over a person during the person's absence." N.D.Cent.Code § 28–01–32 (Cum. Supp.1989).

the state, when BFE's cause of action accrued.

The district court decided if the two-year statute of limitations applied, the running of the time had not been suspended, or tolled, by the amended tolling statute because WCC was amenable to service under the North Dakota long-arm statute. *Bottineau Farmers Elevator v. Woodward–Clyde Consultants,* Civil No. A4–86–84, slip op. at 2 (D.N.D. Nov. 17, 1989) (order granting motion to amend answer). The district court decided, however, that the applicable statute of limitations was the ten-year statute of repose applicable to claims involving improvements to real property and thus BFE's action was not time-barred. *Id.* at 3–4 (undisputed that action was filed within 10 years of substantial completion of construction).

Immediately before trial began, WCC filed a motion for summary judgment and renewed its argument that BFE's lawsuit was barred by the two-year statute of limitations for malpractice claims and that the tolling statute was inapplicable. WCC further argued that if the tolling statute applied, it violated the commerce clause and the equal protection clause of the fourteenth amendment of the Constitution, as well as the equal protection provision of the state constitution. The district court denied the motion for summary judgment [4] and the trial proceeded. WCC filed a motion for directed verdict at the close of BFE's case and again at the close of all the evidence. The district court denied each motion. The case was submitted to the jury. The jury found in favor of BFE and against WCC and apportioned the fault as follows: 32% to WCC, 7% to BFE, and 61% to "others." The jury awarded BFE $224,-773.11 for damages caused by negligence and pre-judgment interest at the rate of 6%. In a supplemental interrogatory, the jury found that 27% of the damage had been caused by the April 1984 wind storm.

WCC renewed its statute of limitations arguments in post-trial motions for judgment notwithstanding the verdict (JNOV) or in the alternative for new trial. The district court changed its analysis on the statute of limitations issue, found that WCC had provided "engineering services, which were clearly professional," and applied the two-year statute of limitations for malpractice claims instead of the ten-year statute of repose for claims involving improvements to real property. *Id.,* slip op. at 2 (Mar. 5, 1990) (order denying post-trial motions). The district court decided, however, that BFE's claim was not time-barred because WCC, a foreign corporation, had been out of the state at the time the claim had accrued and had not returned to the state since that time, and the running of "any statute of limitations" had been suspended, or tolled, by the tolling statute in effect at that time, that is, before it was amended in 1989. *Id.* The district court also refused to reduce the damages award by 27% because it found that the jury had awarded damages for the wind storm in addition to damages for negligence. *Id.* at 1. Finally, the district court held that under North Dakota law WCC was jointly liable for the negligence of "others." *Id.* at 2. Accordingly, the district court reduced the damages award by 7% for BFE's contributory negligence and entered judgment in favor of BFE in the amount of $277,626.70 (93% of $224,773.11, plus 6% pre-judgment interest ($69,587.70)). This appeal followed.

WCC first argues the district court erred in holding BFE's cause of action was not time-barred by the two-year statute of limitations for malpractice claims.[5] WCC

---

**4.** The district court stated on the record "I'm just simply going to put [the motion for summary judgment] down and proceed with the trial and see where we are." Tr. vol. 1 at 1. *See* docket entry for Nov. 20, 1989 (clerk's record of jury trial—1st day—in chambers) (motion for summary judgment denied).

**5.** WCC phrases its argument as a challenge to the district court's denial of its motion for sum-

mary judgment. Denial of summary judgment is not properly reviewable on appeal from a final judgment entered after a full trial on the merits. *See Jarrett v. Epperly,* 896 F.2d 1013, 1016 & n. 1 (6th Cir.1990); *Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1359 (9th Cir.1987) (movant suffers injustice if summary judgment motion is improperly denied; however, more *unjust to deprive party of jury verdict after trial*

argues BFE's cause of action accrued in October 1983, when Lindelof advised BFE's board of directors that the tilting was due to poor soil conditions at the site. BFE did not file its complaint until April 1986, more than two years later. WCC further argues the running of the two-year statute of limitations was not suspended, or tolled, by the tolling statute. N.D.Cent.Code § 28–01–32. WCC argues that it was not "absent" from the state for purposes of the tolling statute either because it had designated a local agent for service of process or because it was subject to long-arm jurisdiction throughout the statutory period. Thus, in either situation, WCC argues that the tolling statute did not toll the running of the statute of limitations. In the alternative, WCC argues that the tolling statute is unconstitutional.

In response, BFE argues the two-year statute of limitations for malpractice claims is not applicable because soil testing is a licensed trade or occupation and not a learned profession. BFE argues the applicable statute of limitations is the six-year statute of limitations applicable to actions for non-professional negligence and breach of contract, N.D.Cent.Code § 28–01–16(1), (2).[6] BFE further argues that, even if the two-year statute of limitations applied, its complaint was timely filed in April 1986 because its cause of action, or claim for relief, did not accrue until September 1985, when BFE received the report from the independent consultants and learned what had caused the silo elevator addition to tilt. Alternatively, BFE argues that, even if its cause of action accrued in October 1983, its complaint was timely filed in April 1986 because the running of the statutory period was tolled by the tolling statute. BFE argues the tolling statute, as it existed before 1989, contained no exception for substitute service or personal jurisdiction. Neither party argues on appeal that the

ten-year statute of repose for improvements to real property applies.

With respect to the constitutionality of the tolling statute, BFE argues WCC waived the commerce clause violation argument by raising the constitutional argument only in an untimely filed motion for summary judgment and then failing to raise that issue in subsequent motions. On the merits, BFE argues the tolling statute is constitutional and, even if it is unconstitutional, such a ruling should only be applied prospectively.

## ACCRUAL OF CAUSE OF ACTION

■ As noted above, because the district court applied the tolling statute, it did not expressly determine when BFE's cause of action, or claim for relief, accrued. The district court did, however, note the discovery rule of accrual applied and thus implicitly decided that BFE's cause of action accrued in October 1983 when Lindelof advised BFE's board of directors that the tilting had been caused by poor soil conditions at the site. Slip op. at 2 (order denying post-trial motions).

■ We review de novo district court determinations of state law. *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). Under North Dakota law, a cause of action accrues, and the statute of limitations begins to run, at the time the plaintiff discovers facts that would place a reasonable person on notice that a potential claim exists. *E.g., Froysland v. Altenberg*, 439 N.W.2d 797, 799 (N.D.1989). By October 1983, BFE not only knew that it had suffered an injury (the silo elevator addition began to lean off center as early as August 1982), but, after hearing Lindelof's report, it also knew, or reasonably should have known, that the possible cause was "bad soil" and that WCC may have been negligent in failing to warn it about the poor soil conditions

---

on basis of appellate review of whether pleadings and affidavits at time of motion demonstrated need for trial); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed.Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987).

6. N.D.Cent.Code § 28–01–16(1), (2), provides in part that "[a]n action upon a contract, obligation, or liability, express or implied," or "upon a liability created by statute, other than a penalty or forfeiture," must be commenced within six years after the claim for relief has accrued.

at the construction site. These facts were sufficient to place BFE on notice that a potential claim existed.

## MALPRACTICE STATUTE OF LIMITATIONS

■ Under North Dakota law, if the claim involves malpractice or professional negligence, the two-year statute of limitations applies; otherwise, the six-year statute of limitations for non-professional negligence applies. If the claim involves malpractice, "the malpractice statute of limitations controls over statutes of limitations applicable to contract or other tort actions." *Johnson v. Haugland*, 303 N.W.2d 533, 539 (N.D.1981). Thus, in the present case the key question is whether the claim involved malpractice, that is, professional negligence, or non-professional negligence. As discussed above, the district court found that WCC's engineering services were "clearly professional" and applied the statute of limitations for malpractice. BFE argues the district court erred in applying the malpractice statute of limitations because that statute of limitations applies only to physicians and lawyers. BFE also argues that even if the malpractice statute of limitations is not limited to physicians and lawyers and applies more generally to professionals, soil testing does not require a college degree and is thus not a "profession" within the meaning of the malpractice statute of limitations.

The North Dakota Supreme Court recently discussed whether an occupation is a "profession" for purposes of the malpractice statute of limitations in *Jilek v. Berger Electric, Inc.*, 441 N.W.2d 660, 663 (N.D. 1989) (holding electricians are tradespersons and not "professionals" for purposes of malpractice statute of limitations). In that case the court refused to limit the malpractice statute of limitations to only those professions recognized at common law, *id.* at 662 (medicine, law, theology), or to extend it to all licensed occupations. *Id.* (listing as examples of licensed trades cosmetology, embalming and plumbing). Instead, the court adopted an intermediate, dictionary-based definition of "profession" as an occupation that requires "specialized knowledge and intensive preparation in skills as well as the scholarly principles underlying such skills," *id.* (footnote and citations omitted), and held that, "as a general rule, a profession is an occupation that requires a college degree in the specific field." *Id.* at 663.

We agree with the district court that WCC's specialized engineering services were "clearly professional" within the meaning of the malpractice statute of limitations. Engineering is one of the professions listed in the dictionary definition of profession upon which the North Dakota Supreme Court relied in *Jilek v. Berger Electric, Inc.*, 441 N.W.2d at 662. Moreover, the fact that many of WCC's employees, including those who were involved in the testing at issue in the present case, have undergraduate and graduate degrees in specific fields such as geology, geotechnical engineering and civil engineering, also supports the conclusion that WCC was providing "professional services." *See Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, 419 N.W.2d 920 (N.D.1988) (applying malpractice statute of limitations to engineering firm's design of water system); *see also Georgetowne Ltd. Partnership v. Geotechnical Services, Inc.*, 230 Neb. 22, 430 N.W.2d 34, 38 (1988) (similar soil evaluation and foundation recommendation report prepared by engineering firm in connection with construction of shopping center held professional services).

## TOLLING STATUTE

Because BFE's complaint was filed in April 1986, more than two years after the cause of action accrued in October 1983, its action is barred unless, as the district court concluded, the running of the statute of limitations was suspended, or tolled, by the tolling statute, N.D.Cent.Code § 28–01–32. WCC argues the district court erred in applying the tolling statute. WCC argues the tolling statute does not apply because it had designated a local agent for service of process or because it was subject to long-arm jurisdiction throughout the statutory period. In the alternative, WCC argues that the tolling statute is unconstitutional

because it impermissibly burdens interstate commerce. BFE argues the tolling statute does apply because, as it existed before it was amended in 1989, it contained no exception for substituted service or personal jurisdiction. BFE also argues that WCC waived any constitutional challenge. On the merits, BFE defends the constitutionality of the tolling statute and argues that, even if the tolling statute is unconstitutional, such a ruling should only be applied prospectively.

For the reasons discussed below, we hold the district court correctly applied the tolling statute as it existed before it was amended in 1989. However, we hold the tolling statute as it existed before it was amended in 1989 is unconstitutional. We further hold that our ruling should be applied retroactively.

■ We must first decide whether the district court correctly applied the tolling statute as it existed before it was amended in 1989 to this lawsuit. As discussed above, the tolling statute before it was amended in 1989 did not contain an exception for personal jurisdiction. N.D.Cent. Code § 1–02–10 provides that "[n]o part of this code is retroactive unless it is expressly declared to be so." The North Dakota Supreme Court has consistently held that substantive statutes are not to be applied retroactively in the absence of specific legislative intent, but its decisions regarding the retroactivity of procedural statutes have varied. *See, e.g., Craig v. Herzman,* 9 N.D. 140, 81 N.W. 288, 290 (1899) (holding procedural statutes may be applied retroactively despite lack of specific legislative intent), *aff'd sub nom. Red River Valley National Bank v. Craig,* 181 U.S. 548, 21 S.Ct. 703, 45 L.Ed. 994 (1901).

In 1979 the state supreme court abandoned the substantive-procedural distinction[7] and held that "[a]ll statutes enacted by the legislature are to be applied prospectively, *i.e.,* they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." *Reiling v. Bhattacharyya,* 276 N.W.2d 237, 240–41 (N.D. 1979) (footnote omitted); *see also State v. Dimmler,* 456 N.W.2d 297, 298 (N.D.1990) (holding criminal statute of limitations applied prospectively only); *Fortier v. Traynor,* 330 N.W.2d 513, 515 (N.D.1983) (holding expert opinion requirement was essentially a statute of limitations and was not retroactive in application). The state supreme court believed that such a narrow interpretation of N.D.Cent.Code § 1–02–10 would put the legislature on "notice that it must specifically state that a statute is to apply retroactively if the legislature desires it to apply retroactively." *Reiling v. Bhattacharyya,* 276 N.W.2d at 240 (footnote omitted).

Because the North Dakota legislature did not specifically state that the 1989 amendment should apply retroactively, the district court correctly applied the tolling statute as it existed before it was amended in 1989 to this lawsuit.

■ We must next decide whether, as the district court concluded, the tolling statute applies here. WCC argues the tolling statute does not apply because it was subject to service of process[8] throughout the statutory period. WCC argues that it was not "out of the state" because it had designated a local agent for service of process and was subject to long-arm juris-

---

**7.** As the state supreme court observed in *Reiling v. Bhattacharyya,* 276 N.W.2d 237, 240 (N.D. 1979),

> [t]he substantive-procedural distinction is frequently unclear and artificial because few statutes are solely substantive or solely procedural. Because almost all procedural statutes affect substantive rights to some extent, a substantive-procedural decision must be made by balancing the interests on a case-by-case

basis without any clear, workable guidelines for determining whether a statute is substantive or procedural.

**8.** In 1989 the state legislature amended the tolling statute to add a personal jurisdiction exception. *See* note 3 *supra.* However, in light of our determination that North Dakota would not apply the amendment retroactively, this part of our analysis does not consider the personal jurisdiction exception.

diction.[9] WCC cites in support *Workmen's Compensation Bureau v. H.F. Johnson Co.*, 135 F.Supp. 901 (D.N.D.1955). In that case the defendant, a foreign corporation, argued the plaintiff's tort action was barred by the statute of limitations. The plaintiff argued that the defendant could not avail itself of the statute of limitations defense because it had not obtained a certificate of authority to transact business within the state and had not appointed a registered agent as required by law. The district court held that, even though the defendant had failed to comply with the statutory requirement imposed as a condition of doing business within the state, the defendant could assert the statute of limitations as a defense because it had placed itself in such a position that it could have been served with process, which it had done by designating an agent for service of process within the state under the Federal Motor Carrier Act, and thus was present within the state for purposes of the statute of limitations. *Id.* at 904, *citing Colonial & United States Mortgage Co. v. Northwest Thresher Co.*, 14 N.D. 147, 103 N.W. 915, 917 (1905) (construing predecessor tolling statute). *Accord Bancorp Leasing & Financial Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 275 (9th Cir.1987) (Oregon law; listing other jurisdictions); *Tarter v. Insco*, 550 P.2d 905 (Wyo.1976) (tolling statute does not apply if substituted service available).

More recent cases suggest, however, that the North Dakota Supreme Court no longer recognizes the service of process exception set forth in *Workmen's Compensation Bureau v. H.F. Johnson Co.* and *Colonial & United States Mortgage Co. v. Northwest Thresher Co.* In *Walsvik v. Brandel*, 298 N.W.2d 375 (N.D.1980), decided in 1980, the state supreme court held that the availability of long-arm service of process did not supersede the tolling of the statute of limitations period. *Id.* at 377,

citing *Dew v. Appleberry*, 23 Cal.3d 630, 153 Cal.Rptr. 219, 222, 591 P.2d 509, 512 (1979) (tolling statute depends upon physical presence of person in state, not availability of service of process). The state supreme court specifically noted that the availability of long-arm jurisdiction and the tolling statute were not necessarily irreconcilable because the state legislature "may justifiably have concluded that a defendant's physical absence impeded his [or her] availability for suit and, at the same time, adopted legislation that encourages a plaintiff to use substitute service and adjudicate his [or her] claim expeditiously." 298 N.W.2d at 377.

In 1986, in *Loken v. Magrum*, 380 N.W.2d 336, 341–42 (N.D.1986) (defendants were an individual and a transport company, both Canadian), the state supreme court reaffirmed *Walsvik v. Brandel* and held that the availability of substituted service of process on a non-resident motorist defendant (upon the state highway commissioner) did not supersede the tolling of the statute of limitations period during the defendant's absence from the state. The court also held that the tolling statute applied to both residents and non-residents, thus rejecting the defendants' argument that it applied only to residents who left the state to reside elsewhere. *Id.* at 340; *accord Cvecich v. Giardino*, 37 Cal.App.2d 394, 99 P.2d 573, 574–76 (1940) (California tolling statute applies to nonresidents). The court concluded that it was up to the state legislature to provide an exception to the tolling statute and, in the absence of specific legislative action, refused to recognize an exception for substitute service of process. 380 N.W.2d at 341 (comparing 1877 and 1888 New York tolling statutes which included exceptions for a person or corporation that had designated agent for service of process; before 1989, North Dakota tolling statute included exception only

---

**9.** The North Dakota long-arm statute permits the exercise of jurisdiction over a person, including a corporation, who commits a tort within or without the state causing an injury to another person or property within the state, consistent with the requirements of due process. N.D.R.Civ.P. 4(b)(2)(C); *see, e.g., Falkirk Mining*

*Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369 (8th Cir.1990) (North Dakota law). Here, WCC purposefully availed itself of the privilege of conducting activities within the forum state and BFE's claim arose out of WCC's forum-related activities.

for foreclosure of real estate mortgages); *Walsvik v. Brandel*, 298 N.W.2d at 377.

In light of the *Walsvik v. Brandel* and *Loken v. Magrum* decisions, we agree with the district court that the tolling statute as it existed before 1989 did not contain a service of process exception. Thus, the fact that WCC had appointed a local agent for service of process or was subject to long-arm jurisdiction throughout the statutory period does not preclude application of the tolling statute. Because WCC was out of the state when BFE's claim for relief accrued, and has not returned to the state since that time, the tolling statute suspended, or tolled, the running of the malpractice statute of limitations, unless, as discussed below, the tolling statute cannot be applied because it is unconstitutional.

CONSTITUTIONALITY OF TOLLING STATUTE

■ WCC argues that the tolling statute is unconstitutional under the commerce clause on the basis of the Supreme Court's decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988) (*Bendix*). WCC first raised this constitutional argument in the memorandum in support of its motion for summary judgment filed on the first day of trial. Filing # 66, at 12–19. As a preliminary matter, BFE argues WCC cannot rely upon the motion to preserve the constitutional issue for appellate review because the motion was untimely served in violation of the 10–day notice requirement in Fed.R.Civ.P. 56(c) and because WCC failed to raise the constitutional issue in its subsequent motions for directed verdict and for JNOV or new trial. WCC argues the district court did not deny the motion for summary judgment as untimely filed.

■ We hold the defect of untimely service has been waived. BFE did not object to the untimely service of the motion for summary judgment. In the absence of an objection, the defect of untimely service may be deemed waived. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2719, at 10 (2d ed. 1983 & Supp.1991);

see, e.g., *Green v. White*, 693 F.2d 45, 47 (8th Cir.1982), *cert. denied*, 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).

■ We also hold the constitutional issue has not been waived. WCC raised the constitutional issue in its motion for summary judgment and did not have to specifically reassert the constitutional issue in its subsequent motions for directed verdict or for JNOV in order to preserve that issue for consideration on appeal. *See Grubb v. FDIC*, 868 F.2d 1151, 1160 (10th Cir.1989) (issue raised in motion for summary judgment but not in motion for directed verdict held properly before court on appeal); *Scola v. Boat Frances R., Inc.*, 546 F.2d 459, 460 (1st Cir.1976) (issue raised in motion for summary judgment but not in motion for directed verdict held properly before court on appeal); *cf. Landes Construction Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1370 (9th Cir.1987) (issue raised in motion for limine but not in motion for directed verdict held properly before court on appeal).

We now turn to the merits of WCC's constitutional argument. *Bendix* involved a contract dispute. Bendix, a Delaware corporation with its principal place of business in Ohio, filed a diversity action in federal district court in Ohio against Midwesco, an Illinois corporation with its principal place of business in Illinois, for breach of contract. Midwesco asserted the Ohio statute of limitations as a defense; Bendix responded that the statute of limitations had not elapsed because the Ohio tolling statute suspended, or tolled, the running of the statutory period for claims against entities that are not within the state and have not designated an agent for service of process. Midwesco argued the tolling provision violated the commerce clause. The district court agreed and dismissed the action; the court of appeals affirmed, noting that the Ohio tolling statute required a foreign corporation to choose between appointing a local agent for service of process, which would expose it to the general jurisdiction of the state courts, or remaining liable in perpetuity to

**1074**

state claims. 820 F.2d 186, 188 (6th Cir. 1987) (citation omitted).

The Supreme Court agreed. The Court explained that

> statute of limitations defenses ... are an integral part of the legal system and are relied upon to protect the liabilities of persons and corporations active in the commercial sphere. The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce. The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain.

*Id.* at 893. The Court found that the Ohio tolling statute imposed a significant burden on interstate commerce because it "[r]equir[ed] a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction." *Id.* The Court acknowledged that "serving foreign corporate defendants may be more arduous that serving domestic corporations or foreign corporations with a designated agent for service." *Id.* The Court, however, concluded that Ohio could not justify the tolling statute as a means of assisting its citizens in pursuing their claims against foreign corporations because long-arm service was available. *Id.* at 894 (long-arm jurisdiction conceded by the parties). The Ohio tolling statute subjected the activities of foreign and domestic corporations to inconsistent regulations, and thus violated the commerce clause, because it imposed a greater burden on out-of-state companies that it did on Ohio companies. *Id.; see Juzwin v. Asbestos Corp.,* 900 F.2d 686, 689–91 (3d Cir.) (New Jersey tolling statute), *cert. denied,* —— U.S. ——, 111 S.Ct. 246, 112 L.Ed.2d 204 (1990); *Abramson v.*

*Brownstein,* 897 F.2d 389, 391–93 (9th Cir. 1990) (California tolling statute).

Applying the analysis in *Bendix,* we hold the North Dakota tolling statute, as it existed before amendment in 1989, violates the commerce clause. The North Dakota tolling statute places a significant burden on interstate commerce because it forces a non-resident defendant to choose between being physically present in the state for the limitations period or forfeiting the statute of limitations defense. As in *Bendix,* the state's interest in assisting its residents in litigating against non-resident defendants, when long-arm service of process is available, cannot justify the imposition of a greater burden on non-residents than residents. *See Abramson v. Brownstein,* 897 F.2d at 392 & n. 6 (similar physical presence requirement for individual non-resident); *cf. Bendix,* 486 U.S. at 892, 108 S.Ct. at 2221 (foreign corporations required to appoint local agent and subject themselves to general jurisdiction of state courts); *Juzwin v. Asbestos Corp.,* 900 F.2d at 690 (similar). Like the Third Circuit in *Juzwin v. Asbestos Corp.,* 900 F.2d at 690, *citing Bendix,* 486 U.S. at 898, 108 S.Ct. at 2224 (Scalia, J., concurring in judgment), we think the state's legitimate interest could adequately be protected by a narrower statute that would toll the running of the statute of limitations when long-arm service or substituted or constructive service is not available. We note that the 1989 amendment, which is not applicable here, added a personal jurisdiction exception to the tolling statute.

We do not think our commerce clause ruling should be applied only prospectively and not to the parties in this case. In the present case, retroactive applicability is a federal question because the ruling itself is derived from federal constitutional law. *See American Trucking Ass'ns v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148 (1990) (plurality opinion). Retroactive application of the ruling to the parties before the court is consistent with the Supreme Court's recent decision in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439,

2445–46, 115 L.Ed.2d 481 (1991), in which the Court announced that full retroactivity is the normal rule in civil cases and limited the applicability of the *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), test for prospectivity. *But cf. Juzwin v. Asbestos Corp.*, 900 F.2d at 692–97 (decision applied retroactively under *Chevron Oil Co. v. Huson* test; case decided in 1990, prior to 1991 Supreme Court decision in *James B. Beam Distilling Co. v. Georgia*).

Accordingly, we reverse the judgment of the district court.[10]

---

**10.** 28 U.S.C. § 2403(b) provides that when the constitutionality of a state statute "affecting the public interest is drawn in question" in a suit in federal court between private parties, the court is required to "certify such fact to the attorney general of the State" and to permit the state to intervene and argue on the constitutional question. Certification is "a duty of the court that should not be ignored, even if the claim is obviously frivolous or may be disposed of on other grounds." *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir.1985). However, failure to comply does not deprive the district court or the court of appeals of jurisdiction. *Id.* (citing cases, including some in which certification occurred even after judgment on appeal).

The tolling statute clearly affects the public interest. However, neither the district court nor this court certified the issue to the state attorney general. Accordingly, we order the clerk of this court to promptly file with the attorney general of the state of North Dakota a certificate in conformity with 28 U.S.C. § 2403(b) and further order that the entry of judgment and mandate of this court be withheld for a period of 30 days from the date of this opinion to allow the state attorney general to take such steps as may be advisable. *Cf. Strong v. Board of Educ.*, 902 F.2d 208, 213 n. 3 (2d Cir.) (post-appeal certification; constitutional claim was not reached on appeal), *cert. denied*, —— U.S. ——, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990).